**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ASHLEY SCHOBER,**

                           **Plaintiff,**

      **v.**                               **1:04-CV-1110**
                                               **(GLS)**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                           **Defendant.**

_____

**APPEARANCES:**                 **OF COUNSEL:**

**FOR THE PLAINTIFF:**

OFFICE OF STEPHEN J.       STEPHEN J. MASTAITIS, JR.,
MASTAITIS, JR.                  ESQ.
1412 Route 9P
Saratoga Springs, New York 12866

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY     WILLIAM H. PEASE
United States Attorney        Assistant U.S. Attorney
PO Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Ashley Schober challenges the denial of disability benefits by the Commissioner of Social Security.  Schober brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination.  Having reviewed the administrative record, the court affirms the Commissioner's decision.

## II.  Procedural History

In August 2002, Bella Schober filed for child Supplemental Security Income (SSI) benefits on behalf of her daughter, Ashley.  Through her mother, Ashley alleged disability due to attention deficit hyperactivity disorder, oppositional defiant disorder, and mood disorder.  After her application was denied, a hearing was conducted by Administrative Law Judge (ALJ) Thomas P. Zolezzi.  On April 30, 2004, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

## III.  Facts

The evidence in this case is not in dispute, and the court incorporates the parties' factual recitations.  *See Pl.'s Br. pp. 2-5, Dkt. No. 11; Def.'s Br. pp. 3-6, Dkt. No. 17.*

## IV.  Contentions

Schober contends that the ALJ's decision is not supported by substantial evidence.  More specifically, she claims that the ALJ erred when he: (1) disregarded the opinion of her treating source and (2) determined that Schober's alcohol and drug use, as well as her failure to take her medication regularly, contributed to her disabling impairments. The Commissioner counters that substantial evidence supports the ALJ's disability decision.

## V.  Discussion

### A.    Standard and Scope of Review

A court's review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ.  The ALJ's decision is subject to judicial review on appeal.  *See* 42 U.S.C. § 405(g).  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied,

even if it appears to be supported by substantial evidence.  *See Johnson*,

817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors

justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *See Ferraris v.

Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's "findings is limited to

assessing whether substantial evidence in the record supports those

findings." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see also* 42

U.S.C. § 405(g).  "Substantial evidence has been defined as 'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion[.]'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)

(citations omitted).  It must be "more than a mere scintilla" of evidence

scattered throughout the administrative record.  *Id*.  "To determine on

appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must

also include that which detracts from its weight."  *Id*.  However, a reviewing

court cannot substitute its interpretation of the administrative record for that

of the Commissioner if the record contains substantial support for the ALJ's

4

decision.  *See  Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has authority to reverse with or without remand.  *See* 42

U.S.C. § 405(g).  Remand is appropriate where there are gaps in the

record or further development of the evidence is needed.  *See Parker v.*

*Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Cutler v. Weinberger*,

516 F.2d 1282, 1287 (2d Cir. 1975) (remand to permit claimant to produce

further evidence).  Reversal is appropriate, however, when there is

"persuasive proof of disability" in the record and "remand for further

evidentiary proceedings would serve no purpose."  *Parker*, 626 F.2d at

235; *see also Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal

without remand for additional evidence particularly appropriate where

remand would result in lengthening the "painfully slow process" of

determining disability).

## B.    Standard for Disabled Child's SSI Benefits[1]

The Supplemental Security Income program provides benefits to

---

[1]On August 22, 1996, Congress enacted the 1996 Act, which amended the statutory standard for children seeking SSI benefits based on disability.  Subsequent regulations were enacted to implement the childhood disability provisions of the 1996 Act.  *See* 62 Fed. Reg. 6408 (1997) (codified at 20 C.F.R. pt. 416).  However, Ashley Schober's application was adjudicated under the statutory standard enunciated in the 1996 Act.  Accordingly, the court will apply the legal standards articulated in the 1996 Act.

disabled individuals that meet certain statutory criteria, as defined by the Social Security Act.  *See* 42 U.S.C. § 1381.  To be considered disabled, a child seeking SSI benefits must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

The regulations establish a three-step disability determination process.  *See* 20 C.F.R. § 416.924.  First, the ALJ must determine if the child is engaged in substantial gainful activity (SGA).  *See* 20 C.F.R. § 416.924(b).  If a claimant is engaged in SGA, she will not be considered disabled.  If the claimant is not engaged in SGA, then step two requires that the ALJ decide if the child's alleged impairments or combination of impairments are severe.  *See* 20 C.F.R. § 416.924(c).  The child will not be found to have a severe impairment if the impairment constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  *Id.*  However, if the ALJ finds that the claimant has a severe impairment, the analysis proceeds to the final step, which requires the ALJ to determine whether the impairment(s) meet,

6

medically equal, or functionally equal the severity of an impairment in the listings.  *See* 20 C.F.R. § 416.924(d).  If the child does not have an impairment which either meets or is medically equivalent to a listed impairment, the ALJ must determine whether the child's impairments are functionally equivalent to a listed impairment.  *See id.*  An impairment will be found to be functionally equivalent to a listed impairment if it results in "extreme" limitations in one domain of function or "marked" limitations in two domains.[2]  *See* 20 C.F.R. § 416.926a.

---

[2]A marked limitation is a

limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. [A child's] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities.  'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a (e)(2)(i).

An extreme limitation is

when [a child's] impairment(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities. [A child's] day-to-day functioning may be very seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities. 'Extreme' limitation also means a limitation that is 'more than marked.'  'Extreme' limitation is the rating we give to the worst limitations.  However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a (e)(3)(I).

The Commissioner will assess all functional limitations caused by the child's impairment if a child's impairment or combination of impairments does not meet or equal any impairment contained in the listings. *See* 20 C.F.R. § 416.926a(a). If the functional limitation(s) caused by the impairments are the same as the disabling functional limitations caused by a listed impairment, the Commissioner will find that the impairments are functionally equivalent in severity to the listed impairment. *See id.*

In making that determination, the Commissioner considers a child's functional limitations in terms of the following six domains: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for yourself; and (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a (b)(1)(i-iv). As mentioned, a medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a. "If the 'functional equivalency' test is satisfied,...only then will the child be found to be disabled." *Carballo ex rel. v. Apfel*, 34 F. Supp. 2d 208, 216 (S.D.N.Y. 1999).

8

Finally, an individual is not eligible for benefits if alcoholism or drug abuse is a contributing factor material to the Commissioner's disability determination.  See 20 C.F.R. § 416.935.  "The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the Commissioner] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1).[3]

In this case, the ALJ found that Schober satisfied Step One because she was born on September 20, 1988 and never engaged in substantial gainful activity.  (Tr. 15, 21).  In Step Two, the ALJ determined that Schober had "severe" impairments due to attention deficit hyperactivity disorder, oppositional defiant disorder, bipolar disorder, and polysubstance dependency.  *Id.*  However, the ALJ found that none of the impairments met or equaled the criteria of any impairment listed at 20 C.F.R. Part 404,

---

[3]In considering whether the claimant would still be considered disabled absent her drug or alcohol addiction, the Commissioner must "evaluate which of [claimant's] current physical and mental limitations, upon which [the Commissioner] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the] remaining limitations would be disabling."  20 C.F.R. § 416.935(b)(2).  If it is determined that the remaining limitations would not be disabling, the Commissioner will "find that [claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i).  If the Commissioner determines that the claimant's remaining limitations are disabling, the claimant is disabled "independent of [claimant's] drug addiction or alcoholism and [the Commissioner] will find that [claimant's] drug addiction or alcoholism is not a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(b)(2)(i)(ii).

Subpart P, Appendix 1.  (Tr. 22).  Since Schober did not have an

impairment which met or equaled any listed impairment, the ALJ evaluated

her functional limitations to determine whether they were functionally

equivalent to a listed impairment.  (Tr. 19).

In Step Three, the ALJ evaluated Schober's functional limitations in

each of the six domains contained in the regulations and found that her

impairments were functionally equivalent to a listed impairment.  (Tr. 17-18,

22).  As such, the ALJ found that Schober had been under a "disability"

since she filed her application for benefits.  (Tr. 18, 22).

However, the ALJ also found that Schober had not been compliant

with her medication and that drug and alcohol use were contributing factors

material to his disability determination.  (Tr. 18-22).  He then reevaluated

the six domains at times when Schober was in compliance with her

medication and abstaining from drug and alcohol abuse, and at those

times, the ALJ found that her impairments did not functionally equal a

listing.  (Tr. 21-22).  Consequently, he found Schober not disabled and

denied benefits.  (Tr. 22).

## C.   <u>Treating Physician Rule, Noncompliance with Treatment, and Alcohol and Drug Use</u>

10

Schober contends that the opinion of her treating psychiatrist, Dr. Jeffrey Daley, should have been given controlling weight.  Schober also aruges that the ALJ erred when he found that her noncompliance with her treatment regimen and her drug and alcohol use substantially contributed to her condition.

Generally, the opinion of a treating physician is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence[.]"  *Foxman v. Barnhart*, 157 Fed. Appx. 344, 346 (2d Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2).  An "ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks and citation omitted).  If the treating physician's opinion is not given "controlling weight," the ALJ must consider the entire record and give special assessment to several factors to determine how much weight to afford the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  The factors are: "the [l]ength of the treatment relationship and the frequency of examination" by the treating physician for the condition(s) in question, the medical evidence supporting

the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, "the ultimate finding of whether a claimant is disabled and cannot work...[is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."  *Id.*  Thus, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."  *Id.*  Furthermore, where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, Schober contends that the ALJ erroneously disregarded the opinion of her treating psychiatrist, Dr. Daley.  She also claims that Dr. Daley's disability opinion is supported by the opinion of Dr. Annette Payne, a consulting psychologist.

12

These contentions are without merit.  The ALJ refused to accept Dr.
Daley's opinion in making his final disability determination because
Schober was noncompliant with her treatment and abused alcohol and
drugs.  Significantly, the ALJ initially concluded that Schober's impairments
were severe and functionally equivalent to a listed impairment.  As such,
he initially found Schober disabled.  Only after considering her failure to
follow the prescribed treatment and her alcohol and drug use did the ALJ
conclude that Schober was not disabled.

As mentioned, the final disability determination is reserved for the
Commissioner.  *See Snell*, 177 F.3d at 133.  The opinion of Schober's
treating psychiatrist was not binding on the ALJ.  The ALJ explained that
Dr. Daley's opinion was based on examinations from September 2000,
almost two years prior to Schober's application for disability benefits.  For
this reason, he afforded it less weight.  Instead, the ALJ properly afforded
greater weight to the newer medical evidence, including some of Dr.
Daley's more recent notes, since it was more relevant to Schober's alleged
disability period.

The ALJ considered the objective evidence as it related to Schober's
functional limitations in six areas of functioning.  (Tr. 17-18).  After initially

finding that Schober's impairments were functionally equivalent in severity to those in the listings, the ALJ properly noted that failure to follow the prescribed treatment may be a basis for denying benefits.  (Tr. 18).  In consideration of this principle, the ALJ turned to Dr. Daley's records and Dr. Annette Payne's examination, both of which support his disability determination.

Dr. Payne, a consulting psychologist, examined Schober on October 18, 2002.  (Tr. 137-141).  She described Schober as being a compulsive liar, having temper tantrums, and refusing to comply with and follow requests.  (Tr. 138).  Dr. Payne's records also note that Schober was aggressive toward peers and adults, disorganized and distracted, and irritable, and that her father caught her drinking and smoking marijuana.  (Tr. 138-139).  Dr. Payne concluded that Schober's cognitive functioning was "within the average range."  (Tr. 140).

Dr. Daley's records demonstrate that Schober failed to show up for scheduled office visits and to take her medication consistently.  (Tr. 177-191).  On May 7, 2002, Dr. Daley noted that Schober had not been taking her medication for the previous month and a half.  (Tr. 190).  At the next visit, on July 30, Dr. Daley noted that Schober appeared "to be out of

control with a tough group of friends" and that her parents were concerned about her substance abuse.  (Tr. 188).  However, on that same day, Dr. Daley noted that Schober's mother reported that she did not fill the previous prescription due to a change in her insurance.  *Id.*

The ALJ cited numerous examples of how Schober's illnesses improved when she complied with the prescribed treatment and abstained from alcohol and drugs.  (Tr. 19).  For example, after spending three days in Four Winds Hospital in August 2002, Schober's Global Assessment of Functioning (GAF) increased from 30 to 60.  (Tr. 129).  Upon discharge, she was taking Zyprexa without adverse effects, and her overall mood and affect had improved.  (Tr. 129, 131).   Dr. Daley's October 2002 progress notes show that Schober's symptoms improved with medication, and he described her as being "less oppositional and functioning fairly well."  (Tr. 186).  Again, on November 22, Schober was reported to be "doing better overall and maintaining better behavior without depressive or manic symptoms."  (Tr. 184).  However, in January 2003, Schober expressed her desire to discontinue the Zyprexa.  (Tr. 182).  Two months after her discontinuation, Dr. Daley noted that Schober was "running wild" again. (Tr. 180).

The ALJ properly considered Schober's alcohol and drug use as a factor which significantly contributed to her impairments.  Schober has been noted several times as a drug abuser.  (Tr. 138, 141, 147,  188, 220). In light of the evidence in the record, the ALJ reevaluated the six domains of functioning in determining whether Schober's drug addiction and alcohol use were contributing factors material to his disability determination.  (Tr. 19-21).  The ALJ's analysis showed that, absent drug and alcohol use and when taking her medication consistently, Schober's limitations do not meet, medically equal, or functionally equal the criteria of any listed impairment. (Tr. 21).

The ALJ properly weighed the severity of Schober's functional limitations against the other evidence, including the records of her treating psychiatrist, in determining that Schober was noncompliant with her treatment regimen and abusing alcohol and drugs.  Although the ALJ ultimately concluded that Schober was not disabled, he adequately explained his reasons for this conclusion.  Accordingly, the ALJ's decision is supported by substantial evidence.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying benefits is **AFFIRMED**; and it is

further

ORDERED that the Clerk of the Court provide a copy of this Order

to the parties.

IT IS SO ORDERED.

September 25, 2006
Albany, New York

Gary L. Sharpe
U.S. District Judge

17